Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOY RACER, INC., ) | No. C-11-02833 EJD (PSG) |
| Plaintiff, ) | |
| v. ) | **PLAINTIFF'S OMINBUS RESPONSE TO MOVANTS' MOTIONS TO QUASH** |
| DOES 2-71, ) | |
| Defendants. ) | |

Three identical motions to quash were filed by anonymous movants. (*See* ECF Nos. 9, 10, and 11). None of the movants provided any personal identifying information or their Internet Protocol ("IP") address, and can only be identified by the e-mail addresses they provided. The movants argue that the Court authorized subpoenas that Plaintiff issued to Internet Service Providers ("ISP"s) should be quashed on grounds of misjoinder. Because the respective motions are identical (other than the e-mail addresses provided), Plaintiff addresses the motions together in this omnibus response and refers to the movants in the singular as "Movant."

**ARGUMENT**

This brief consists of four parts: Part I states the legal standard for joinder. Part II argues that joinder is proper at the early discovery stage of the litigation. Part III argues that the cases cited by Movant are distinguishable. Part IV argues that the exclusive remedy for misjoinder is severance, not the quashing of subpoenas that seek information relevant to the underlying action.

# I. LEGAL STANDARD FOR JOINDER

Rule 20(a)(2) of the Federal Rules of Civil Procedure ("FRCP") permits the joinder of defendants in one action if: 1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2).

Claims arise out of the "same transaction or occurrence" if they share similar factual backgrounds. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Claims possess sufficient factual similarity if they "arise out of a systematic pattern of events." *Bautista v. Los Angeles County*, 216 F.3d 837, 842-43 (citations omitted). To aid in their application of the "transaction or occurrence test," courts look to how the test is applied in other provisions of the Federal Rules, such as Rule 13(a). *Mosley v. General Motors Corporation*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The Supreme Court states that the meaning of "transaction", as used in Rule 13(a), "may comprehend a series of many occurrences, depending not so much upon the immediateness of their own connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926). Accordingly, "Rule 20 would permit all reasonably related claims by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *Mosley*, 497 F.2d at 1333. The second prong of Rule 20(b) is satisfied if "some question of law or fact common to all the parties will arise in the action." *League to Save Lake Tahoe v. Tahoe Reg. Plan. Agcy.*, 558 F.2d 914 (9th Cir. 1977) (citing Wright & Miller, *Federal Practice and Procedure*: Civil § 1653).

After evaluating the Rule 20(a)(2) requirements, "a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

In deciding whether to allow joinder at a particular stage of the litigation, the joinder rules are "to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *Save Lake Tahoe v. Tahoe Reg'l*

*Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Works of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The purpose of the joinder rules is, *inter alia*, to "avoid multiplicity of suits." *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554 (N.D. Ill. 1964).

## II. JOINDER IS PROPER AT THIS EARLY DISCOVERY OF THE LITIGATION

Joinder is proper at the early discovery stage of this litigation. First, Plaintiff's allegations plainly satisfy the Rule 20(a)(2) requirements for joinder. Second, joinder at the early discovery stage of the litigation promotes principles of fundamental fairness. Finally, severance at this stage of the litigation—where the identities of the doe defendants are unknown—would separate an essentially unitary problem.

### a. Plaintiff's allegations exhaustively satisfy the Rule 20(a)(2) requirements for joinder.

Plaintiff's allegations satisfy the Rule 20(a)(2) requirements for joinder. *MCGIP, LLC v. Does 1–18*, No. 11-1495, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) (Chen, J.) (citing *Voltage Pictures, LLC v. Does 1–5,000*, No. 10-0873, 2011 WL 1807438, at *4 (D.D.C. May 12, 2011)) (finding comparable pleadings "proper" for permissive joinder at the early discovery stage of the litigation).

First, the complaint alleges that all of the Doe Defendants were part of a common scheme. For example, the complaint asserts that "[i]n using the P2P BitTorrent file distribution method, each Doe Defendant participated in, attempted to aid in, or at least knew of the formation and operation of a common-plan conspiracy to unlawfully reproduce and distribute Plaintiff's Work by exchanging pieces of the Work file in a torrent swarm on BitTorrent." (Compl. ¶ 33.). *See also Mosley*, 497 F.2d at 1333-34 (reversing district court's severance of plaintiffs where defendant was alleged to have engaged in a common scheme of discriminatory conduct). Second, the complaint alleges that the Doe Defendants used the BitTorrent protocol to distribute Plaintiff's works amongst themselves— which by virtue of the nature of the BitTorrent protocol necessarily involves collaboration among the Does Defendants. (Compl. ¶¶ 5, 11–13, 15, 23.) Finally, Plaintiff asserted a right to relief against the

Doe Defendants jointly and severally for the Doe Defendants' active participation in a civil conspiracy and the associated infringement damage. (Compl. ¶ 32–39.) Such allegations have been held sufficient to sustain joinder while discovery of Doe Defendants' identities is underway. *MCGIP, LLC*, 2011 WL 2181620, at *4 (Chen, J.) (holding such allegations were sufficient at the early stage of litigation and postponing further joinder discussion until movants were made party to the litigation); *Voltage Pictures*, 2011 WL 1807438, at *4 (same); *see also Call of the Wild Movie v. Does 1–1,062*, No. 10-455, 2011 WL 996786, at *4–5 (D.D.C. Mar. 22, 2011) (finding plaintiffs' allegations the Doe defendants used BitTorrent, BitTorrent "makes every downloader also an uploader," and any peer who has completed a download "is automatically a source for the subsequent peer" to be sufficient to make claims against defendants "logically related"); *First Time Videos, LLC v. Does 1-500*, no. 10 C 5254, 2011 WL 3498227, at *11 (N.D. Ill. Aug. 9, 2011) (same); *Hard Drive Productions, Inc. v. John Does 1-44*, 11 C 2828 (N.D. Ill. Aug. 9, 2011) (Holderman, C.J.).

As to the second prong of 20(a)(2), this suit involves questions of law and fact that are common to all defendants. Plaintiff's complaint singles out several legal questions underlying the claims against each defendant. (Compl. ¶ 8.) Further, this suit involves common questions of fact. By way of example, the methods used "to investigate, uncover, and collect evidence about any infringing activity will be the same as to each Doe Defendant." *First Time Videos*, 2011 WL 3498227, at *2.

### b. Joinder at the early discovery stage of the litigation promotes principles of fundamental fairness.

Under the Federal Rules, "the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers*, 383 U.S. at 724. Joinder is strongly encouraged because it promotes judicial economy. It inherently allows parties to join, *inter alia*, related parties and have common issues of law and fact decided for all of the parties in a single decision. The benefit of judicial economy gives way—even when the requirements of Rule 20 are met—when joinder violates principles of fundamental fairness. *Coleman*, 232 F.3d at 1296 (9th Cir. 2000) (internal citation omitted). At this stage of the litigation—where Plaintiff is simply seeking the

identities of individuals associated with IP addresses—joinder is not only consistent with principles of fundamental fairness, but actually promotes the same. *First Time Videos*, 2011 WL 3498227, at *11 ("[J]oinder at this stage is consistent with fairness to the parties and in the interest of convenience and judicial economy because joinder will secure the just, speedy, and inexpensive conclusion for both FTV and any future named defendants … [Severance would] would make it highly unlikely that FTV could protect its copyrights in a cost-effective manner."

A couple of different motions brought in a different case provide a classic illustration of why joinder at this stage of the litigation promotes fundamental fairness. In that case two motions were brought on behalf of two different IP addresses, but both motions and IP addresses actually belonged to the same individual. (*See Hard Drive Productions, Inc., v. Does 1-69*, C-11-03004, (N.D. Cal. Aug. 25, 2011) ECF Nos. 12-13.) Even though those two motions were brought on behalf of two different IP addresses, both motions and IP addresses actually belonged to a single individual. (*Id.*) It would be unfair and inefficient to sever an identical claim brought against a single individual. Multiple IP addresses (and thus multiple alleged doe defendants) are frequently associated with a single individual. This happens when an individual's modem is reset. Each time it is reset, the individual subscriber is assigned a different IP address. If, for instance, the individual is in the swarm containing the unique file with Plaintiff's video, and resets his Comcast modem, he will still remain in the same swarm with the same unique, but he will simply appear with a new IP address. This seems to be what happened in those two motions.

By way of another example, in a case filed by Plaintiff's counsel in the Northern District of Illinois against 28 doe defendants, *each* of the IP addresses was, in fact, associated with the *same* individual. *See* Steele Decl. Ex. A. Had the court there severed the case before the plaintiff had completed early discovery, Plaintiff would have unwittingly filed *28 separate* copyright infringement actions against the *same* anonymous individual. This would have entailed *28* separate filing fees, complaints, civil cover sheets, attorney appearance forms, corporate disclosure statements, motions for expedited discovery, memoranda of law in support thereof, declarations, proposed orders, motion hearings and subpoenas. The responding doe defendant would have received *28* separate ISP notification letters, would have had to file *28* separate motions to quash and

answer *28* separate complaints—lest he be subject to a default judgment. The actions could have been before nearly all of the judges in the Eastern Division of the Northern District of Illinois and would almost certainly have received some level of inconsistent treatment. No plausible argument can be made that severance would have been appropriate in this real world example. The same is true here.

Just as personal jurisdiction analysis is premature when the Court does not know a defendant's identity—and thus does not know whose contacts to evaluate—so too is it premature at the identification stage of litigation to sever unidentified parties from litigation. Without knowing who the parties are (i.e., whether a given individual is associated with some or all of the IP addresses in a complaint), a court cannot know whether it is severing identical claims against the same individual. Moreover, the unfortunate individual who is severed multiple times from the same action as a result of premature severance would face multiple claims, multiple lawsuits and a much higher overall litigation burden than would have occurred had a court deferred the severance question merely until the plaintiff received identifying information from the ISP(s).

Judge Howell of the United States District Court for the District Court of Columbia presciently anticipated the multiple IP address-to-individual scenario outlined above. Judge Howell reasoned that severance would be especially contrary to the interests of any individuals who have been named as Doe Defendants multiple times in the same suit for multiple observed instances of infringing activity, a possibility that is a consequence of the dynamic reassignment of many consumer IP addresses:

> [S]ome IP addresses may relate to the same person, who is engaged in the allegedly infringing activity claimed by plaintiffs. Severance of the putative defendants associated with different IP addresses may subject the same Time Warner customer to multiple suits for different instances of allegedly infringing activity and, thus, would not be in the interests of the putative defendants.

*Call of the Wild Movie*, 2011 WL 996786, at *6.

It is worth noting that small business copyright holders, such as Plaintiff, would have literally no realistic means of economically enforcing their copyrights against digital infringement if

misjoinder decisions forced them into a judicially-imposed game of Russian Roulette (i.e. being required to pay separate filing fees and hoping that the IP addresses pursued are not associated with the same underlying individual). *First Time Videos, LLC v. Does 1-500*, No. 10-cv-6254, at *20 (N.D. Ill. Aug. 9, 2011) (Castillo, J.), ECF No. 151. (Finding that the plaintiff would be prejudiced if severance were granted because the expense of litigation would be too great a hindrance on its ability to protect its legal rights). It is also worth noting that settling infringers are much more likely to be able to escape liability with a modest settlement when Plaintiff's initial litigation costs (due to multiple filing fees and attorney time) are isolated to a single case because Plaintiff, at that point, is not only looking to recoup costs, but also to go to trial head up against the remaining doe defendant.

Finally, Plaintiff observes that Rule 21 safeguards the Court from an unreasonable burden on its own docket. Rule 21 vests the Court with the discretion to sever this action at any time. Certain of the Court's esteemed colleagues were concerned about the litigation logistics that would result from multiple parties defending a copyright action at once. These concerns might have merit at a later stage of the litigation, but the power of *sua sponte* severance makes predicting the future unnecessary. The Court need only be concerned with the immediate-term because it retains the authority to immediately sever an action, if necessary.

All of the foregoing considerations reveal the wisdom and reasoning behind why the overwhelming majority of federal courts elect to defer the joinder question until the identities of the individuals associated with the IP addresses have been ascertained.

### c. Severance at this stage of the litigation would separate an essentially unitary problem.

While joinder rules are ultimately discretionary in nature, this discretion is not without limit. According to the Second Circuit, "an attempt to separate an essentially unitary problem is an abuse of discretion." *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) (emphasis added); *see also Leslie*, 2010 WL 2991038 at *4 (citing the abuse of discretion standard set forth in *Spencer, White & Prentis, Inc.*); *Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL 4313777 at *1 (N.D. Cal. Oct. 26, 2010) (Chesney). Here, Movant's request for severance of the

parties can potentially sever an identical claim against an identical individual, which is the purest imaginable form of a unitary problem.

### III. THE CASES CITED BY MOVANT ARE DISTINGUISHABLE

The cases cited by Movant are distinguishable. Movant cites at length from *CP Productions, Inc. v. Does 1-300*, 10-cv-6255 (N.D. Ill. Feb. 7, 2011) ECF No. 27. What Movant fails to discuss is that Judge Shadur's dismissal in that case was a Rule 4(m) dismissal, not a severance. *Id.* Moreover, Judge Shadur's primary due process concern in that case was the inclusion of Does from across the nation (*id.*)—a concern not relevant here as Plaintiff has attempted to include only California-based defendants.

Movant cites *VPR Internationale v. Does 1-1017*, 11-cv-2068 (C.D. Ill. Apr. 29, 2011) ECF No. 15, where Judge Baker denied Plaintiff's motion for *ex parte* discovery, calling it a "fishing expedition." As with *CP Productions*, *VPR Internationale* did not touch on the issue of joinder. *Id.* Moreover, Plaintiff is unaware of any other court that has actually followed the reasoning applied by Judge Baker in his decision. For example, in his decision, Judge Baker insisted that the plaintiff name ISP's as defendants before he would grant the plaintiff's petition for discovery, notwithstanding that ISP's are immune from liability for subscriber infringement under the Digital Millennium Copyright Act.

Movant cites *Pacific Century International LTD v. Does 1-101*, 11-cv-2533 (N.D. Cal. July 8, 2011) ECF No. 7. In that case, the court severed, *sua sponte*, a complaint filed by the plaintiff. *Id.* As before, Movant's description is incomplete. After receiving supplemental briefing from the plaintiff in that case, the court granted the plaintiff leave to file a first amended complaint renaming *all* of the previously severed doe defendants. *Pacific Century International LTD v. Does 1-101*, 11-cv-2533 (N.D. Cal. July 24, 2011) ECF No. 20.

In *IO Group, Inc. v. Does 1-435*, 10-cv-4382, No. C 10-4382 SI, 2011 WL 445043, (N.D. Cal. Feb. 3, 2011, the court stated that the complaint contained no factual allegations to support the assertion that the Doe defendants were connected to the same transactions or occurrences and contained no facts that show the defendants specifically acted in concert. Here, Plaintiff's complaint alleges that all defendants: participated in the same swarm, downloaded the same file, made the file

available to other defendants, exchanged data with the other defendants and participated in the same common plan. (Compl. ¶ 5, 8, 11-17.)

Movant cites *Diabolic Video Productions, Inc. v. Does 1-2099*, No. 10-cv-5865-PSG, 2011 WL 3100404 (N.D. Cal. May 31, 2011) ECF No. 16. In that case, the court granted the plaintiff's *ex parte* application, but then severed all but one defendant from the case. *Id.* To the court's credit, it admitted that it was "limited in its technical understanding of the issue." *Id.* at 7. The court decided that cases involving BitTorrent are "precisely" the same as earlier peer-to-peer file sharing cases. *Id.* Plaintiff can count only a few decisions where courts have found no difference (or not considered the difference) between the BitTorrent protocol and older peer-to-peer protocols. Indeed, these decisions are notable for their rarity. *First Time Videos, LLC v. Does 1–76*, No. 11 C 3831, 2011 WL 3586245, at *10 (N.D. Ill. Aug. 16, 2011) (Bucklo, J.) ("The overwhelming majority of courts have denied as premature motions to server prior to discovery.") (collecting cases).

Movant cites three near-identical decisions: *New Sensations, Inc. v. Does 1-1768*, 10-cv-5864 (N.D. Cal. May 31, 2011) ECF No. 11, *Boy Racer, Inc. v. Does 1-52*, 11-cv-2329 (N.D. Cal. May 31, 2011) ECF No. 8, and *Boy Racer, Inc. v. Does 1-71*, 11-cv-1958 (N.D. Cal. May 31, 2011) ECF No. 8. These decisions were issued by the same court immediately after its *Diabolic* decision and are flawed for the same reasons. In fact, the Court to which the severed parties in *Boy Racer v. Does 1-71* were referred, granted the plaintiff's request for expedited discovery with respect to Does 2-71 without severing any parties. *See Boy Racer v. Does 2-71*, 11-cv-2833 (N.D. Cal. July 13, 2011) ECF No. 8.

Movant cites *Millennium TGA, Inc. v. Does 1-21*, 11-cv-2258 (N.D. Cal. May 12, 2011) ECF No. 8. What Movant fails to tell the Court is that Judge Conti ultimately *granted* the plaintiff's discovery request without severing any parties. *Millennium TGA, Inc. v. Does 1-21*, 11-cv-2258 (N.D. Cal. June 22, 2011) ECF No. 14.

Movant cites *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004), in which the court found that whole litigation of certain claims in inappropriate and severed all but one defendant from the case. *BMG*, though, involved the infringement of multiple

copyrighted works and an archaic file transfer protocol, making the case for joinder less clear than here. *Id.*

Similarly, Movant cites *LaFace Records, LLC v. Does 1-38*, No. 5:07-cv-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008) ECF No. 22, because the court ordered the severance of a lawsuit against defendants using peer-to-peer networks to download copyrighted material. The defendants used FastTrack technology to commit the infringement. *Id.* This technology involves a one-to-one download and upload transfer of data. This means that only two defendants can be interacting at any given time and the likelihood that defendant interacted with any other particular defendant is quite low. This differs greatly from the BitTorrent protocol at issue in the present case, in which every user within the swarm simultaneously uploads and downloads from one another.

In remaining cases cited by Movant (*Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) ECF No. 11; General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY), and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004) ECF No. 15; *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004)), the allegations involved use of the same ISP, mere use of a non-collaborative file transfer protocol to transfer data, or mere commission of the same unlawful act. In contrast, Plaintiff's allegations involve collaboration and a common scheme among the defendants on a much deeper level.

Movant's final citation is to a blog (http://gondwanaland.com/mlog/2004/12/30/deployment-matters/) in support of Movant's assertion that BitTorrent is no different than earlier file transfer protocols. Unfortunately for Movant, the article points out significant differences between the two technologies:

> "The earlier peer-to-peer downloads will be spread across a huge number of files and peers downloading the same file ***won't necessarily know about each other*** . . . . For BitTorrent, clients connecting to a tracker via a single torrent are by definition all downloading the same file, and ***they know about each other*** — the ideal situation for swarming distribution."

*Id.* (emphasis added). Further the article explains that under earlier P2P file-transfers, the users will not be able to upload to each other while they are downloading, but that BitTorrent users are able to upload to each other while downloading—constantly interacting with each other to complete the file transfer. While the article does point out similarities between to two file transfer systems, the web article does not argue that there is actually less interaction among peers in BitTorrent, but in fact these older technologies actually involve more interaction than was previously thought.

### IV. THE EXCLUSIVE REMEDY FOR MISJOINDER IS SEVERANCE, NOT THE QUASHING OF A SUBPOENA

Movant asks the Court to quash the subpoenas in this case on the grounds of misjoinder, but he does not explain how misjoinder is a grounds for quashing the subpoenas. Fed. R. Civ. P. 21 vests courts with the power to sever cases, but it does not vest courts with the power to quash subpoenas. Instead, this power—and its limits—are set forth in Fed. R. Civ. P. 45.

Movant's only allowable basis for quashing this subpoena is if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." *Id.* 45(c)(3)(A)(iii). No other 45(c)(3) grounds apply here: this subpoena does not require travel, it does not involve trade secrets or disclosure of an unretained expert's opinion, and undue burden or time for compliance objections properly lie with the subpoenaed party. Fed. R. Civ. P. 45(c)(3); *Kessel v. Cook County*, No. 00 C 3980, 2002 WL 398506, at *2 (N.D. Ill. Mar. 14, 2002) (undue burden or inconvenience objections properly lie with the subpoenaed party, and not with the objectors). And, if Movant is making a claim of privilege or protection, then he must make this claim expressly and describe the nature of the information he seeks to have withheld. Fed. R. Civ. P. 45(d)(2)(A).

Courts have held that Internet subscribers do not have an expectation of privacy in their subscriber information, as they have already conveyed such information to their Internet Service Providers. *See, e.g., Guest v. Leis*, 255 F.3d 325, 335–36 (6th Cir. 2001); *United States v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000); *United States v. Kennedy*, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000). As one court reasoned, "if an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially

opening the computer to the world." *In re Verizon Internet Services, Inc.*, 257 F. Supp. 2d 244, 267 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *See also UMG Recordings, Inc. v. Does,* No. 06-0652 SBA (EMC), 2006 U.S. Dist. LEXIS 32821, at *8-9, 2006 WL 1343597 (N.C. Cal. Mar. 6, 2006); *MCGIP, LLC V. Does 1-18,* 2011 WL 2181620 at *1 (N.D. Cal. June 2, 2011) (Chen, J.).

The mere severance of a party (or parties) from this case at the early discovery stage does not reduce the relevance of the information sought in the subpoenas. In particular, the information sought will allow Plaintiff to identify the remaining defendant's potential co-conspirators, will allow Plaintiff to more accurately catalog the extent of harm caused by the remaining defendant's infringement and will allow Plaintiff to determine whether any of the severed IP addresses are actually associated with the remaining defendant.

Plaintiff has already demonstrated and this Court agreed that it has "good cause" for seeking the information sought in the subpoenas. The good cause analysis does not change simply because certain doe defendants are severed from the litigation. As described in Plaintiff's original *ex parte* application, Plaintiff has good cause for seeking this information because it is highly relevant to the action, it is under threat of imminent destruction due to finite data retention polices at ISPs and Plaintiff's need for this information outweighs any prejudice to the responding party.

Courts in the Ninth Circuit have generally recognized a duty on their part to assist plaintiffs in their quest for defendant's true identities. *See, e.g.*, *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of the alleged defendants [is] not [ ] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants.")). In fact, federal courts across the country routinely and virtually universally allow *ex parte* discovery to identify unknown defendants. *See, e.g.*, *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996) ("To the extent the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation."); *see also id.* at 555 n.3 (collecting cases); *Dean v. Barber*, 951 F.2d 1210, 1215

(11th Cir. 1992) (finding error in district court's denial of a plaintiff's motion to join an unknown defendant where identity of the defendant could have been determined through discovery); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (reversing and remanding because when "a party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery") (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Gordon v. Leeke*, 574 F.2d 1147, 1152–53 (4th Cir. 1978)). This is because the very purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible." *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958).

## V. CONCLUSION

Joinder is proper at the early discovery stage of the litigation because Plaintiff's allegations satisfy the Rule 20(a)(2) prerequisites for permissive joinder and because joinder at the early discovery stage of the litigation promotes principles of fundamental fairness. In addition, severance at the early stage of the litigation—where the defendants' identities are unknown—is a separation of an essentially unitary problem. The cases cited Movant involve different technologies, pleadings and facts. Finally, the exclusive remedy for misjoinder is severance, not the quashing of subpoenas.

Respectfully Submitted,

STEELE HANSMEIER, PLLC,

**DATED: September 2, 2011**

By:  /s/ Brett L. Gibbs, Esq.
Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 2, 2011, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

John Does:

john.doe.does.271@gmail.com

jd02833.271@gmail.com

jd077455690@gmail.com

(no further identifying information supplied)

                _____/s/_ Brett L. Gibbs, Esq._____

                Brett L. Gibbs, Esq.